UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| D.B., *a minor, by and through his mother and natural guardian, A.T.*, | No. 13-cv-2781 (MJD/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| NICKOLAS HARGETT, *in his individual capacity and in his official capacity as an employee of Independent School District 31*; and INDEPENDENT SCHOOL DISTRICT 31, | |
| Defendants. | |

---

This matter came before the undersigned United States Magistrate Judge upon Defendant School District's Motion to Dismiss.  [Docket No. 8].  The motion has been referred to the undersigned Magistrate Judge for a report and recommendation, (see Order of Referral [Docket No. 16]), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  The Court held a hearing on the Motion on January 15, 2014.  (Minute Entry [Docket No. 23]).  For reasons outlined below, the Court recommends that Defendant School District's Motion to Dismiss, [Docket No. 8], be **GRANTED in part** and **DENIED in part**.

I.      **BACKGROUND**

D.B. ("Plaintiff") is a 7-year-old boy whose mother and natural guardian, A.T., initiated this action on October 8, 2013, by filing a Complaint, [Docket No. 1], which names as defendants Independent School District 31, (the "Defendant School District"); and Nickolas Hargett, (Defendant Hargett"), a bus driver for Defendant School District, in both his individual

and official capacities.  Plaintiff generally alleges that on February 20, 2013, in response to Plaintiff's throwing a tantrum on the bus, Defendant Hargett prevented Plaintiff from exiting the bus at his driveway and instead dropped him at another stop 0.14 miles away.  (Id.)

On October 29, 2013, Defendant School District, representing itself and Defendant Hargett in his official capacity, made their Motion to Dismiss, [Docket No. 8],[1] and filed their Memorandum in Support thereof, [Docket No. 10].  The case was originally assigned to the Hon. Ann D. Montgomery, who recused on November 1, 2013, resulting in reassignment to the Hon. Michael J. Davis.  (Order [Docket No. 15]).  Subsequently, on November 5, 2013, Chief Judge Davis referred the School Defendants' Motion to Dismiss to this Court for report and recommendation.  (Order [Docket No. 16]).  On November 15, 2013, Plaintiff filed his Memorandum, [Docket No. 18], and supporting materials, [Docket Nos. 19, 19-1, 19-2]; and the School Defendants filed their Reply, [Docket No. 20], on November 27, 2013, at which time the Motion was fully briefed.  The Court heard argument on the Motion on January 15, 2014. (Minute Entry [Docket No. 23]).


II.     **DEFENDANT SCHOOL DISTRICT'S and DEFENDANT HARGETT'S OFFICIAL CAPACITY MOTION TO DISMISS [Docket No. 8]**

Defendant School District and Defendant Hargett in his individual capacity move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] The Defendant School District expressly states that the Motion to Dismiss is not made on behalf of Defendant Hargett in his individual capacity, but rather, is only made on behalf of the Defendant School District and of Defendant Hargett in his official capacity.  (Mot. Dismiss [Docket No. 8]).

  At the time that the Defendant School District made the present Motion, Defendant Hargett in his individual capacity had not yet been served with the summons and complaint.  Subsequently, December 19, 2013, Defendant Hargett was served with the summons and complaint, (Summons Returned Executed [Docket No. 21]); and on January 9, 2014, he filed his Answer in his individual capacity, [Docket No. 22].

A. **Facts**[2]

The incident that gave rise to this lawsuit occurred on February 20, 2013, when Plaintiff was 6 years old. (Compl. [Docket No. 1], at ¶14). Plaintiff lived with his mother, father, and older brother in Wilton, Minnesota, and he and his older brother attended Central Elementary School, which is managed and administered by Defendant School District. (Id. at ¶¶ 14, 16, 19). In 2012, Plaintiff was diagnosed with emotional behavior disorder and attention deficit-hyperactivity disorder. (Id. at ¶¶17-18). Since his diagnosis of emotional behavior disorder in Spring 2012, Defendant School District has classified Plaintiff as a "special education" student, and has developed an Individualized Education Program that mainstreamed him for most classes, but provided interventions to support his social, emotional, and behavioral needs. (Id. at ¶ 17).

Defendant School District provides bus service for elementary school students who live more than a mile from their school. (Id. at ¶ 20). Plaintiff and his brother regularly ride the bus to school, but they ride the bus home infrequently because they regularly participate in after-school activities that provide alternative transportation. (Id. at ¶ 21). When they do ride the bus home, their regular stop is a group of mail boxes approximately 0.14 miles from their home. (Id. at ¶ 22). However, on February 18, 2013, two days before the incident that gave rise to this lawsuit, Defendant School District determined that Plaintiff and his brother should be dropped off at their driveway, instead of their regular stop, because an accumulation of snow at the regular stop made it difficult for the bus to maneuver. (Id. at ¶ 22). On the day before the incident, February 19, 2013, Plaintiff and his brother rode home on the bus without incident. (Id. at ¶ 23).

---

[2] When deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, No. 07-cv-1290 (DWF/SRN), 2007 U.S. Dist. LEXIS 50284, at *13 (D. Minn. July 10, 2007) (Frank, J.) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)). Accordingly, for purposes of this Motion, the facts are drawn from Plaintiff's Complaint. [Docket No. 1].

On February 20, 2013, Defendant Hargett drove the bus, and an additional Defendant School District employee was on the bus as Bus Monitor.  (<u>Id.</u> at ¶¶ 25-26).  Plaintiff and his brother sat across the aisle from one another.  (<u>Id.</u> at ¶ 24).  During the bus ride, several students were in and out of their seats while the bus was moving, including Plaintiff, who crossed the aisle to hit and/or kick his older brother.  (<u>Id.</u> at ¶27).  Defendant Hargett took no action with regard to any of the other students; however, both he and the Bus Monitor instructed Plaintiff to remain in his seat.  (<u>Id.</u> at ¶¶ 26, 28, 44).

Plaintiff did not comply, and at some point, Defendant Hargett pulled over, stopped the bus, and ordered Plaintiff to move to a seat at the front of the bus.  (<u>Id.</u> at ¶¶ 28- 29).  Plaintiff again did not comply, and the bus remained stopped for approximately 12 minutes.  (<u>Id.</u> at ¶¶ 29-30).  After that time, Defendant Hargett walked back to Plaintiff and pulled him by his wrists into a standing position, whereupon Plaintiff went limp, and Defendant Hargett lowered Plaintiff to the floor.  (<u>Id.</u> at ¶ 30).  Defendant Hargett continued driving his route and reached Plaintiff's residence, near the end of the route, approximately 20 minutes later.  (<u>Id.</u> at ¶ 33).

As the bus approached Plaintiff's residence, Plaintiff walked to the front of the bus holding his coat, but Defendant Hargett told Plaintiff to "go back and sit down."  (<u>Id.</u> at ¶ 35).  When the bus reached Plaintiff's residence, Defendant Hargett allowed Plaintiff's older brother to exit, but closed the bus doors while Plaintiff was still standing in the stairwell.  (<u>Id.</u> at ¶¶ 36-39).  Defendant Hargett proceeded to drive to the bus's regular stop, at the mail boxes, approximately 0.14 miles from Plaintiff's residence, where he allowed Plaintiff to exit the bus.  (<u>Id.</u> at ¶¶ 39-41).  At that time, the temperature outside was approximately 10 degrees Fahrenheit, with a wind chill of -2 degrees.  (<u>Id.</u> at ¶ 45).

It took Plaintiff approximately 5-10 minutes to walk home from the mailboxes, and when he arrived home, he was crying.  (Id. at ¶ 46).  Plaintiff later told his father that when Defendant Hargett dropped off his older brother and began to drive away, he worried that he would never see his family again.  (Id. at ¶ 40).  Afterward, Plaintiff generally refused to discuss the incident, and alleges that he has suffered "significant psychological and emotional trauma"; that "[h]e is angry, fearful, and . . . finds it difficult to trust adults."  (Id. at ¶¶ 49, 52, 71-72).  During a subsequent interview, Defendant Hargett said that he dropped Plaintiff at the mailboxes instead of at his residence to "give a healthy and immediate consequence for his actions on the bus."  (Id. at ¶¶ 43, 54).

Plaintiff's mother later confronted various Defendant School District employees and administrators, who first promised to look into the incident, and who later discussed aspects of their investigation with her.  (Id. at ¶¶ 47-48, 51, 54, 57-59, 61, 63).  However, Defendant School District has not allowed Plaintiff's mother to review recorded video of the incident, and generally refused to discuss the contents of the video.  (Id. at ¶¶ 55-58, 61-63).  Defendant Hargett resigned his position as a bus driver for Defendant School District on February 25, 2013, upon which Defendant School District declared the incident closed.  (Id. at ¶¶ 60-61).

On February 25, 2013, Plaintiff's mother filed a mistreatment complaint with the Minnesota Department of Education (the "DOE"), which reported the matter to the Bemidji, Minnesota, Police Department, which ultimately decided not to bring criminal charges against Defendant Hargett.  (Id. at ¶¶ 64, 67).  The DOE later determined that Defendant Hargett had neglected D.B., which constituted maltreatment under Minn. Stat. § 626.556, subd. 2(f), but that Plaintiff "did not suffer any physical consequences."  (Id. at ¶ 69 (quoting DOE Report)).  Also in late February 2013, Plaintiff's mother spoke about the incident with the various civil rights

organizations and with local media.  (Id. at ¶ 65).  As the result of the publicity, she was

contacted by B.L., the grandmother of another Central Elementary School student, who said that

her grandson reported that children were "scared" of Defendant Hargett because of unspecified

"prior incidents."  (Id. at ¶ 66).

      In his Complaint, [Docket No. 1], Plaintiff's Count I alleges a 42 U.S.C § 1983 claim

against Defendant Hargett, without distinguishing whether the Defendant Hargett is named in his

individual or official capacity, or both.  (Id. at ¶¶ 74-77).  Specifically, Plaintiff alleges that

Defendant Hargett (a) violated his Fourth Amendment right to be free from unreasonable

searches and seizures and from excessive force; (b) violated his Fifth and Fourteenth

Amendment substantive due process rights not to be deprived of life, liberty, or property without

due process of law; and (c) violated his Fifth and Fourteenth Amendment rights of procedural

due process not to be punished without first being given notice of his alleged offense and a

hearing at which he is represented by counsel and allowed to present evidence and cross-examine

opposing witnesses.  (Id.).  Additionally, Plaintiff's Count II seeks punitive damages against

Defendant Hargett with respect to the 42 U.S.C. § 1983 claim.[3]  (Id. at ¶¶ 78-79).  Plaintiff also

---

[3] Generally, under Minnesota state law, a party seeking punitive damages cannot plead them in his complaint, but rather, must obtain leave of the Court to amend his complaint, based on a *prima facie* showing that he is entitled to such a claim.  See Minn. Stat. §§ 549.191, 549.20 (hereinafter, "Section 549").  This District requires a party asserting Minnesota state law claims to conform to the procedural requirements of Section 549.  Hern v. Bankers Life Cas. Co., 133 F. Supp. 2d 1130, 1134-35 (D. Minn. 2001) (Erickson, M.J.).  Plaintiff acknowledged at the January 15, 2014, motions hearing that, should he seek punitive damages with regard to his state law claims, he would be required to seek to amend his Complaint in order to assert the punitive damages claim.
    However, Plaintiff's Count II punitive damages claim against Defendant Hargett is expressly limited to his Federal claim.  Therefore, Plaintiff is not required to comply with the requirements of Section 549 for purposes of his Count II.  Morlock v. West Cent. Educ. Dist., 46 F. Supp. 2d 892, 923 (D. Minn. 1999) (Tunheim, J.).
    In their present Motion to Dismiss, [Docket No. 8], the Defendant School District and Defendant Hargett initially sought dismissal of Count II, the punitive damages claim, to the extent that it was asserted against them.  (Sch. Defs.' Mem. [Docket No. 10], at 11).  However, Plaintiff clarified at the January 15, 2014, motions hearing that his punitive damages claim was alleged only against Defendant Hargett in his individual capacity.

alleges various Minnesota state law claims against Defendant Hargett in his individual capacity only.[4]

Additionally, Plaintiff's Complaint, [Docket No. 1], alleges the following claims against Defendant School District:

- Count III:  A <u>Monell</u> claim[5] alleging that Defendant School District maintained a policy, pattern, practice or custom of inadequately and improperly training, supervising, and disciplining school bus drivers, including Defendant Hargett, (<u>Id.</u> at ¶¶ 80-85); and

- Count VII:  A claim that Defendant School District, as Defendant Hargett's employer, was vicariously liable for the state-law torts allegedly committed by Defendant Hargett[6] while acting within the course and scope of his duties as a school bus driver.

### B.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff."  <u>Riley v. St. Louis County of Mo.</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 556 (8th Cir. 1998).  All reasonable

---

[4] Plaintiff's Minnesota state law claims against Defendant Hargett in his individual capacity are:
- Count IV:  A state-law assault claim, (Compl. [Docket No. 1], at ¶¶ 86-88);
- Count V:  A state-law battery claim, (<u>Id.</u> at ¶¶ 89-91); and
- Count VI:  A state-law false imprisonment claim, (<u>Id.</u> at ¶¶ 92-97).

[5] A Monell claim is a 42 U.S.C. § 1983 claim brought against a municipality that has adopted some policy, custom or practice that allegedly caused a violation of the claimant's constitutional rights.  <u>See</u> <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 659 (8th Cir. 2007) (city "may be held liable under section 1983 . . . if one of its customs or policies caused the violation of" the plaintiff's constitutional rights (citing <u>Monell v. Dep't of Soc. Servs. of New York</u>, 436 U.S. 658, 690-91 (1978))).

[6] <u>See</u> fn.4, <u>supra</u>.

inferences must be drawn in favor of the nonmoving party.  See <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), quoting <u>Twombly</u>, 550 U.S. at 556-67.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  <u>Id.</u> at 664.

### C.  Discussion

#### 1.  Plaintiff's 42 U.S.C. § 1983 claim against Defendant Hargett in his official capacity

In his written briefing, Plaintiff argues that official capacity claims are allowed in 42 U.S.C. § 1983 actions as "an alternative means of pleading municipal liability under the same standards applicable to <u>Monell</u> claims."  (Pl.'s Mem. [Docket No. 18], at 13-14).  However, at the January 15, 2014, motions hearing, Plaintiff conceded that they could not reach Defendant School District vicariously by means of an official capacity 42 U.S.C. § 1983 claim against

Defendant Hargett, but rather, could only reach the Defendant School District by means of a Monell claim, which is discussed in Part II.C.2, infra.[7]

Accordingly, with regard to Plaintiff's 42 U.S.C. § 1983 official capacity claim, this Court recommends that, the Motion to Dismiss, [Docket No. 8], be **GRANTED**, and that Plaintiff's 42 U.S.C. § 1983 claim against Defendant Hargett, to the extent that it seeks to reach him in his official capacity, be **DISMISSED with prejudice**.[8]

### 2.   Plaintiff's Monell claim against Defendant School District

Defendant School District argues that Plaintiff fails to allege facts sufficient to support his Monell claim.  Defendant School District contends that Plaintiff neither sufficiently identifies any "policy," nor sets forth facts sufficient to demonstrate a "practice" or "custom."[9]  (Defs.' Mem. [Docket No. 10], at 5-11).  Plaintiff argues (1) that he need not identify a particular policy, practice or custom at the pleading stage; and (2) that he has both sufficiently described the policies, practices, or customs at issue, and sufficiently alleged facts that would allow an inference that such policies, practices, or customs are in place.  (Pl.'s Mem. [Docket No. 18], at 4-11).

---

[7] See, e.g., Thompson v. Board of Spec. Sch. Dist. No. 1, 936 F. Supp. 644, 649 (D. Minn. 1996) (finding that 42 U.S.C. § 1983 claims against the Minnesota Department of Education and the Commissioner of the Minnesota Department of Children, Families, and Learning, among other state defendants, could not stand); Dahlin v. Fabian, 2010 U.S. Dist. LEXIS 140171, at *10 (D. Minn. Dec. 14, 2010) ("A state agency and a state official sued in his or her official capacity for damages is not a 'person' within the meaning of section 1983" (citing Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989))).  This is because "[a] suit against a government officer in [their] official capacity is functionally equivalent to a suit against the employing governmental entity."  Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).

[8] As previously noted, the Motion to Dismiss Plaintiff's Count I as it concerns Defendant Hargett is limited to official capacity and does not include individual capacity claims against Defendant Hargett.  Consequently, this Court does not recommend that Plaintiff's Count I be dismissed in its entirety, but rather, limits its recommendation only to dismissal of Plaintiff's official capacity claim.

[9] "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . . as to [have] the force of law.'"  In re Scott County Master Docket, 672 F. Supp. 1152, 1181 n.11 (D. Minn. 1987) (MacLaughlin, J.) (quoting Monell, 436 U.S. at 691.

"When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right."  Doe v. Sch. Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003); see also Shqeirat v. United States Airways Group, 515 F. Supp. 2d 984, 995 (D. Minn. 2007) (Montgomery, J.) (quoting Doe).  Consequently, a plaintiff's "failure . . . to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to their claim for relief." Doe, 340 F.3d at 614.

Nonetheless, in order to survive a Rule 12(b)(6) motion, a complaint alleging a Monell claim must at the least "allege facts which would support the existence of an unconstitutional policy or custom."  Id.  In the present case, Plaintiff's Complaint, [Docket No. 1], fails to do so.

In the present case, with regard to his Monell claim, Plaintiff does not identify any facts which from which any inference regarding any particular policy, custom, or practice could be drawn, but he instead merely alleges the following:

> 81. Prior to February 20, 2013, the School District maintained a policy, pattern, practice, and/or custom of inadequately and improperly training, supervising, and disciplining school bus drivers, including Defendant Hargett, regarding the appropriate methods of managing student behavior, which caused the violations of Plaintiff D.B.'s civil rights alleged above.
> 82. Prior to February 20, 2013, the School District maintained a policy, pattern, practice, and/or custom of inadequately and improperly training, supervising, and disciplining school bus drivers, including Defendant Hargett, regarding the appropriate methods of imposing punishment as a form of discipline for student misconduct, which caused the violations of Plaintiff D.B.'s civil rights alleged above.
> 83. Prior to February 20, 2013, the School District maintained a policy, pattern, practice, and/or custom of inadequately and improperly training, supervising, and disciplining school bus drivers, including Defendant Hargett, regarding the circumstances (if any) under which it was appropriate to drop off a student at a location other than his designated drop-off point, which caused the violations of Plaintiff D.B.'s civil rights alleged above.

(Compl. [Docket No. 1], at ¶¶ 81-83).

These three paragraphs by themselves contain only boilerplate allegations asserting the mere generic elements of a <u>Monell</u> claim without any factual allegations specific to this case. Therefore, the allegations in the Complaint are insufficient to state a <u>Monell</u> claim.  In <u>Triemert v. Washington County</u>, No. 13-cv-1312 (PJS/JSM), 2013 U.S. Dist. LEXIS 179067 (D. Minn. Nov. 18, 2013) (Mayeron, M.J.), <u>adopted by</u> 2013 U.S. Dist. LEXIS 178294 (D. Minn. Dec. 19, 2013) (Schiltz, J.), this District held that similarly "vague and conslusory allegations" were "not sufficient to state a <u>Monell</u> claim."  <u>Id.</u> at *29-30.  Because of the similarity of the complaint language, it is worth quoting <u>Triemert</u> at length:

> In this case, Triemert alleged:
>
>     103. Prior to May 29, 2013, Defendant Washington County developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in Washington County, which caused the constitutional violations of Mr. Triemert's rights.
>
>     104. It was the policy and/or custom of Washington County to inadequately supervise and train its employees, including Defendant Deputies Sullivan and Volk, thereby failing to adequately discourage further constitutional violations on the part of its employees.
>
>     105. These policies and/or customs were the cause of the violations of Mr. Triemert's constitutional rights alleged herein.
> Complaint, ¶¶ 103-05.
>     The conclusory allegations regarding Washington County do not state an actionable <u>Monell</u> claim, because they do not describe any specific policy, custom or practice that allegedly caused a violation of Triemert's constitutional rights. Moreover, there are no other factual allegations in the Complaint showing that an individual Washington County defendant adopted a clearly identified policy, custom or practice that caused his injuries.  Indeed, the Complaint does not provide any description of any policy, custom or practice at all.  Triemert's vague and conclusory allegation[] that his injuries were some caused by some unidentified unconstitutional policies, customs or practices is not sufficient to state a Monell claim.  <u>Iqbal</u>, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); <u>see also</u> <u>Spiller v. City of Texas City, Police Dept.</u>, 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable Monell claim "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts").

Id. (dismissing for failure to state a claim); see also Ulrich v. Pope County, 715 F.3d 1054, 1061

(8th Cir. 2013) (affirming district court's dismissal of a Monell claim where the plaintiff "alleged

no facts in his complaint that would demonstrate the existence of a policy or custom" that caused

the alleged depravation of the Plaintiff's rights).

    Plaintiff argues that the facts allegations in his Complaint are sufficient to state a failure-

to-train Monell claim against the Defendant School District.  (Pl.'s Mem. [Docket No. 18], at 9).

The Eighth Circuit has identified three elements for a 42 U.S.C. § 1983 claim that alleges failure

to train employees: (1) that the government entity's training practices were inadequate; (2) that

the government entity was deliberately indifferent to the rights of others in adopting the training

practices, such that their failure reflects a deliberate or conscious choice by the government

entity; and (3) that the alleged deficiencies in the training practices caused the plaintiff's injury.

B.A.B. v. Bd. of Educ. of St. Louis, 698 F.3d 1037, 1040 (8th Cir. 2012) (citing Parrish v. Ball,

594 F.3d 993, 997 (8th Cir. 2010) (citing, in turn, Andrews v. Fowler, 98 F.3d 1069, 1076 (8th

Cir. 1996) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)))).  Essentially, a plaintiff

"must prove that 'the need for more or different training is so obvious, and the inadequacy so

likely to result in the violation of constitutional rights, that the policymakers of the [government

entity] can reasonably be said to have been deliberately indifferent to the need.'"  B.A.B., 698

F.3d at 1040 (quoting Parrish, 594 F.3d at 998).  "'Deliberate indifference' entails a level of

culpability equal to the criminal law definition of recklessness."  Bender v. Regier, 385 F.3d

1133, 1137 (8th Cir. 2004).

    In the present case, once again aside from the boilerplate allegations contained in

Paragraphs 81-83 of his Complaint, Plaintiff has not pled any facts whatsoever concerning the

Defendant School District's training practices.  Thus, the allegations in the Plaintiff's Complaint are insufficient to assert even the first element of a failure-to-train <u>Monell</u> claim.

Additionally, Plaintiff has not pled any other specific facts that would allow this Court to infer that Defendant School District was "deliberately indifferent" to conduct such as that allegedly engaged in by Defendant Hargett.  "Generally, an isolated incident of alleged . . . misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983."  <u>Ulrich</u>, 715 F.3d at 1061.  In the present case, Plaintiff's Complaint merely describes an isolated incident, and does not allege any incidents beyond this one.[10]

Plaintiff also argues that the fact that Defendant Hargett was allowed to resign, rather than being terminated, suggests a pattern, practice, or custom of deliberate indifference to inadequate training.  However, he offers no authority to support such a novel conclusion.

In short, Plaintiff fails to allege any specific facts identifying any particular policy, practice, pattern, or custom to support his <u>Monell</u> claim against Defendant School District.  Consequently, with regard to Plaintiff's <u>Monell</u> claim against the Defendant School District, this Court recommends that the Motion to Dismiss, [Docket No. 8], be **GRANTED**, and that Count III of Plaintiff's Complaint be **DISMISSED without prejudice**.

### 3.   Plaintiff's claims of vicarious liability for state law torts against Defendant School District

Defendant School District argues that Plaintiff failed to sufficiently plead that Defendant Hargett's intentional conduct was reasonably foreseeable and, consequently, that Plaintiff's claim of vicarious liability for state law torts fails under Rule 12(b)(6).  (Defs.' Mem. [Docket

---

[10] Plaintiff does allege that the grandmother of a Central Elementary School student told Plaintiff's mother that "children were 'scared' of [Defendant] Hargett because of prior incidents involving other students."  (Compl. [Docket No. 1], at ¶ 66).  However, Plaintiff provides no additional information about those "prior incidents" that would allow the Court to conclude (1) that they were sufficiently similar to the facts alleged with regard to Plaintiff as to constitute a pattern of behavior, or (2) that Defendant School District was ever made aware of such prior incidents.

No. 10], at 12-13).  Plaintiff argues both (1) that he is not required to show foreseeability at the pleading stage, making the Defendant School District's argument premature; and (2) that Defendant Hargett's actions were reasonably foreseeable.  (Pl.'s Mem. [Docket No. 18], at 11-13).

Under Minnesota law, a school district "may be held responsible for [its employee]'s alleged [state law] torts under a *respondeat superior* theory, if they occurred within the scope of his employment."  Rau v. Roberts, No. 08-cv-2451 (RHK/JJK), 2009 U.S. Dist. LEXIS 3994, at *5 (D. Minn. Jan. 21, 2009) (Kyle, J.) (citing Freiler v. Carlson Mktg. Group, Inc., 751 N.W.2d 558, 583 (Minn. 2008); Schneider v. Buckman, 433 N.W.2d 98, 101 (Minn. 1988).  "This is true even for intentional torts like assault and battery, as long as [the employee]'s conduct was 'foreseeable, related to and connected with acts otherwise within the scope of employment.'"  Id. (quoting Freiler, 751 N.W.2d at 583 (quoting, in turn, Fahrendorff v. N. Homes, Inc., 597 N.W.2d 905, 910)).

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 663-64.  When analyzing a complaint on a 12(b)(6) motion to dismiss, courts should read the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  "A motion to dismiss a complaint should not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief."  Merry v. Presitge Capital Mkts, Ltd., 944 F. Supp. 2d 702, 706 (D. Minn. 2013) (Nelson, J.) (citing Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994)).  Facts pled which "give the defendant fair notice of what the

claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

In the present case, the Court finds that Plaintiff's Complaint, [Docket No. 1], considered as a whole, gives the Defendant School District fair notice of Plaintiff's claim of its vicarious liability for state law torts committed by its employee Defendant Hargett, and therefore, the Complaint as to this claim meets the Rule 12(b)(6) standard.

Additionally, "whether an employee acted within the scope of his employment 'is ordinarily a question of fact for the jury,'" Id. at *6 (quoting Hentges v. Thomford, 569 N.W.2d 424, 427 (Minn. Ct. App. 1997), and "[t]he Court may not resolve fact disputes on a motion to dismiss." Id. (citing Fla. State Bd. of Admin v. Green Gree Fin. Corp., 270 F.3d 645, 663 (8th Cir. 2001)). The Court, in considering the case authority cited by the Defendant School District in support of its Motion to Dismiss Plaintiff's state tort vicarious liability claim,[11] observes that none of these cases were decided on a Rule 12 motion to dismiss, but instead, they were all decided at the Rule 56 summary judgment stage. Thus, in addition to finding that Plaintiff has sufficiently pled vicarious liability on the part of the Defendant School District with regard to state law tort claims asserted against Defendant Hargett, the Court also finds that this aspect of Defendant School District's Motion to Dismiss is premature.

Consequently, the Court recommends that, with regard to Plaintiff's vicarious liability claim against the Defendant School District, the Motion to Dismiss, [Docket No. 8], be **DENIED without prejudice**.


III.    CONCLUSION

---

[11] The School Defendants cite Frieler, 751 N.W.2d 588; Fahrendorff, 597 N.W.2d 905; and Hartford Fire Ins. Co. v. Clark, 727 F. Supp. 2d 765, 772 (D. Minn. 2010). Indeed, a determination of "foreseeability" at the summary judgment stage is typically a legal question for the Court to determine on a properly developed record.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant School District's Motion to Dismiss, [Docket No. 8], be **GRANTED in part** and **DENIED in part** such that:

1. Plaintiff's 42 U.S.C. § 1983 claim in Count I of Plaintiff's Complaint against Defendant Hargett in his official capacity be **DISMISSED with prejudice**, as set forth above;

2. Plaintiff's <u>Monell</u> claim in Count III of Plaintiff's Complaint against Defendant School District be **DISMISSED without prejudice**, as set forth above; and

3. Defendant School District's motion to dismiss Count VII of Plaintiff's Complaint alleging vicarious liability against Defendant School District for state law torts committed by its employee, Defendant Hargett, be **DENIED without prejudice**, as set forth above.

BY THE COURT:

Dated: March 21, 2014                    s/Leo I. Brisbois
                                         LEO I. BRISBOIS
                                         United States Magistrate Judge


**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 4, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen (14) days** of service thereof.  Written submissions by any party shall comply with the applicable word limitations

provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.